Good morning. May it please the court. My name is Daniel Drake. I'm an attorney from Phoenix, Arizona. I'm here representing John Shahin. I'm going to try to watch my time and save two minutes if I can. The complexion of this case changed somewhat shortly before trial started. The prosecution gave notice a few days before trial, I believe five days before trial, that it was going to use certain telephone records that it had in its possession regarding phone calls between Mr. Shahin and Mr. Harris and also Harris and Rodriguez. The more important point was that the prosecution convicted, obtained a conviction five days prior to starting this trial of Jesse Harris. It listed Harris as a witness on its witness list. And so when the defense attorney, not me at trial, but another attorney, started this case, he anticipated fully that he would be confronted by a fellow by the name of Rodriguez, who was going to testify against him, as well as Harris. And so in that tenor, he took on in the opening statement certain things that he anticipated would come up from the trials, the trial and the plea that had proceeded. So that sort of sets the stage a little bit. Let me turn now to some of the issues that were raised in the brief. And the first one I want to talk about is the indictment. And in the indictment, the charge was a violation of 18 U.S.C. 371, which requires an overt act. There was no overt act in count three of the indictment. It was not terribly hard to figure out what the overt act was, Your Honor. And no objection was raised to the trial court about this. No objection was raised by the counsel. And an overt act was proven. There was no overt act specifically alleged that was proven. They proved, counsel, I forget about alleged. Was there an overt act proven? They proved a number of facts that could be considered overt acts. Is that a fair answer to you? Yes. So why wouldn't it be absurd to reverse the conviction on the ground that the indictment is somehow defective when there was no objection, when there was an overt act proven? And, in fact, my understanding of the overt act is that even when an overt act is alleged, even if you don't prove that overt act, but you prove another overt act, it's sufficient to sustain a conviction. So it seems to me that that's sort of an absurd ground to ask for a reversal of a conviction. Well, I understand the Court's position on that. And I'm not speaking for the Court. I'm just telling you mine. I wanted to make sure I raised the issues and presented the claims. Do you have other issues? Try one of those. I do. I will. Let me move next to Batson. On the Batson challenge, the issue there was that the prosecution, when asked to state a race-neutral issue or basis for striking the juror, said that he yawned, that he didn't – he was a full-time student, worked full-time, didn't appear interested in the case, and yawned. The trial judge, when first confronted with that, found that not remarkable at all and no basis to distinguish that individual juror from many others who were permitted on the panel or who have sat in prior cases. Is that a proper determination by the trial judge, whether he considers that to be remarkable or he considers it to be colorable? Isn't the only question the trial judge has to determine is whether it's race-neutral and is sincerely made? Yes. And as to that, the prosecution later wanted to add to that an issue of the SKS. But coming back to your point, Judge Corman, part of the issue on this is that it's got to be race-neutral, but it's got to be specific to that individual juror. That's what the comparative analysis calls for. So if there are other jurors on the case that yawned, and you strike an Hispanic juror that yawned, then – and your justification is that that juror yawned – that may not be a credible reason. That may not be a valid reason. And one of that – It might be a pretext, is what you're saying. It could be a pretext. The problem here is that the district court decided it wasn't a pretext. It did. It permitted the prosecution to ponder the matter and offer a variety of different reasons. Well, there are two parts to this. And I'll get to that second part, because then it gets to the more important part. But in the first part, the judge never said, no, that's not a good reason. That must be a pretext. You're applying racial discrimination here, excluding this juror. He observed his skepticism about that reason, but never took the second step, which the Supreme Court says we're supposed to defer to, to say it was racial – based on all of the other knowledge about what's going on, to say that this is discrimination. Instead, he went and let the prosecutor elaborate in a fashion that suggested the prosecutor apologized, says that was kind of the quick and dirty version. The judge said, that's right. I'm going to let you elaborate. Tell me now. And then the prosecutor gave a different reason, which nobody, even now, your client doesn't object to the bona fide nature of it, if in fact that was the reason. So the question you're trying to, or the position you're trying to offer to us, is that the elaboration by the prosecutor can't be considered. Why not? Well, it's an issue where you're trying to find what is – what has actually prompted that. And as the Supreme Court said in Miller L., you want to take the answer as it's first given by the prosecution. What's the ultimate question here? The ultimate question is whether there's racial discrimination going on. Yes. Whether the reason offered is a pretext hiding racial discrimination. And what evidence is there at all that there's racial discrimination going on here? Well, the trial judge found that there was prima facie evidence in the fact that of the seven strikes that they used, they eliminated four minorities. And now we're down to one person of all the others that dropped out. Right. And the bar is very low for prima facie. Once we get over that, we only look to the third step. Okay. At the third step here, you have the judge's skepticism about the yawn and being busy, and you have what was later elaborated by the prosecutor, this reason with respect to gun ownership and the friend's gun ownership. Nobody questions the legitimate nature of that if that were, in fact, the reason. So what tells us at this point that the prosecutor actually was trying to discriminate, wasn't actually motivated by the reasons that the prosecutor offered? I mean, in Miller L., you've got this enormous background of racial discrimination, reason to be suspicious. And there's no suggestion that I've seen in the record here. So what is it that should cause us to say the district court erred in determining that this wasn't a pretext, that this was actually racial discrimination? Well, the reason that was first given didn't hold water, that is to say the yawning that did not distinguish this juror from other jurors. And the cases indicate that where the first reason doesn't hold up, not only does it cut against the grain of being a valid reason, it gives you reason to question other explanations. But reason to question isn't the same as compelled to disregard. In this, in Miller L., for example, with the background that the Court pretty clearly found with regard to the behavior of the office in question, okay, reason to be skeptical that they're just looking for any kind of excuse they could find. There's none of that background here. And so is there anything that tells us that we're limited to the first thing out of the prosecutor's mouth and that's something that's explained when the judge says, I'm giving you an opportunity to elaborate, and there's a reference in the record to being 15 minutes later. Is there anything that tells us we can't consider anything other than what's first coming out of the prosecutor's mouth? There may be reason to consider it with skepticism. Maybe it's pretextual. But anything that says we can't consider it? I haven't been able to cite you a case that says you can't consider anything that comes up later on. Isn't there a doctrine in law, I guess it's called the Mt. Healthy, after Mt. Healthy decision of the Supreme Court, where there are dual motives for conduct, one of which was proper, one of which is improper. And the prosecutor or whoever's charged with constitutional wrongdoing gives two explanations. The first one is deemed ineffective, but there's a second motive. And the way the law deals with that is to where you're dealing with two motives, the prosecutor simply or the public official has the burden of showing that he would have done it anyway under the second ground or the second motive. Isn't that the way to deal with it, to basically place on the prosecutor in this case the burden of showing that they would have made the same challenge on other grounds? That's the burden. But what the cases in Miller, Ell, and others talk about is this is not an exercise in thinking up a valid reason or coming up with a valid justification. It may not, but it's clearly valid. You don't dispute that this is a valid ground. You would not if you were the prosecutor and wanted this juror on your case, would  I'm not sure that you might have had concerns, but I'm not sure that distinguishes this juror. You have jurors on this panel that have more than 30 guns. And not those that were seated, as I understand it. I don't know what you mean by panel. And, you know, when I pick a jury in Brooklyn, we call in 75 or 100 jurors. And there are only about 14 that ultimately sit. So I don't know what you mean by other jurors. Were there other jurors that had A47s that the prosecutor left on the jury? No. There was a jury. Well, then that's the answer. I mean, so the fact that there may have been, when you question the whole idea, you find out that, you know, four or five people were victims of crimes and six or seven people did this. But that's not really relevant here. What's relevant is whether the prosecutor let other people on that jury did not exercise a challenge who possessed and owned A47s. Well, only Juror 46 was the only one who indicated that he owned an SPS. Yeah, but he never was – he was never – He was not part of the final selection process. Right. And it wasn't as if the prosecutor let him on the – sit on the jury. Counsel, can I ask you a question? Were there any other jurors who yawned or said they were full-time students for purposes of comparative selection? I don't recall that from the record. I can't give you the site on it. I'll try and figure it out. I've got about two and a half minutes left, if I save any time. So let me try and move to the cumulative error issue. And what I wanted to talk about primarily on that had to do with the vouching and the bolstering issues with respect to the witness, Rodriguez. He was the key witness for the prosecution. Without him, it's a circumstantial case, and it's arguable to a couple of instructions or a couple of constructions. So it's very important for the prosecution to bolster the testimony as to him. So they bring in the fact that Rodriguez was hesitant, and then later when he told a real story, which was supposed to be the true story, he was much more relaxed. They brought in a number of circumstances like that to try and bolster the testimony of Rodriguez. When the defense, before the defense had a chance to cross, they elicited from Mr. Rodriguez who was going to sentence him in an effort to demonstrate that it wasn't going to be the prosecution. It was going to be something other than the prosecution outside that who was going to make a determination. That happens all the time. Now, it may not be an answer, but that happens all the time. I often have a feeling of discomfort when the prosecutor sets me up as the guarantor of the truthfulness of a witness by saying it's his honor, Judge Corman, who will do the sentencing in this case. And that might be bolstering. It's bolstering particularly. The truth. It is true, but it's bolstering when it's first brought out in the fashion that it was here. It created a problem that the judge was sensitive to, and he ultimately came up with a decision that he was going to recuse himself, creating a brand new set of circumstances, and tell the jury that this witness didn't know it when he testified, but I'm not going to sentence him. And to me, that helps as well in that issue. It helps the government as well. There were issues of fact that came in that were not in evidence, references that the prosecution made to the discovery, the 727 pages of discovery, references to the DES records that were never admitted into evidence. There's a reference to a post-conspiracy statement where presumably Rodriguez goes to Shaheen's house, and someone, he cannot say it is Shaheen, in fact, says it's not Shaheen, tells him, I don't have time for this. And does other things. There's no basis for that in the record. It's not relevant. My time is up. Thank you. Thank you. We'll hear from the government. May it please the Court. Good morning. My name is Mark Lukanovich. I'm an assistant United States attorney in the District of Arizona, and I represent the United States in this matter. I've been told to lead with the strongest argument, and I think that it's telling the defense leads, both in its briefs and also here, with the argument regarding the indictment. And I think that the Court has handled that well, and I would proffer that that's their strongest argument. The Court has dealt with that issue, I think, adequately. The only thing I will add to that is that Judge Corman is absolutely right. The Brule case stands for the proposition that even if an overt act is not alleged in the indictment, an overt act may be proven at trial. And that's exactly what happened here. The jury instructions were clear. The overt act that I argued in closing argument was that a purchase was made. And as Judge Clifton pointed out, the indictment itself was fairly clear. It could have been much better drafted, and I take responsibility for that. But the first two counts in the indictment were the substantive counts. Those were overt acts that were both proven at trial, and the jury had no trouble and came back in less than two hours finding the defendant guilty on all counts. So there's no question that they found that overt acts occurred. The substantive counts were sufficient overt acts to prove the conspiracy count. The Batson challenge is no stronger than the indictment argument. The race-neutral reasons were several. As the Court pointed out, my co-counsel at trial was dealing with them very quickly, and she had in her notes that he yawned during the judge's speech. And that speech is about the importance of jury duty. And this person who was in the pool was yawning and looking uninterested during the speech. Somebody yawned during a judge's speech? Sounds like a crap capital crime, right? Your Honor, it may not be a capital crime, but this was my second trial, and I was moved during the speech, and many of the jurors, I believe, were moved during the speech as well. And both my co-counsel and I take very seriously having jurors on the panel who are interested in being jurors and who are interested in the system and coming to the right result. So the fact that this person seemed uninterested while they were being told how important jury service was and was yawning, there is nothing in the record, as Judge Bea pointed out, that there were any other jurors who fit that category. So that itself was a problem. Kennedy, you mentioned that the fact that he yawned and the fact that he was a student, full-time student, is not, quote, not even a colorable claim. Is he applying the wrong standard? Well, I think the not even a colorable claim referred to the SKS. The judge did find that was persuasive, that at the end of the day there wasn't even a colorable Batson claim, the judge found. So I think the not even a colorable claim goes to how not a colorable justification came with respect of the claim that the basis of the objection of the strike being yawning and full-time student. That's when the judge said that's not a colorable justification. Your Honor, if I could return to counsel table and grab the record for a second. I have an ER 657. ER 657 is when we gave our first explanation for the fact that he was a student and the fact that juror number six yawned during his speech, and then the judge says I understand that we're trying to go quickly, but please slow down. So that also reinforces Judge Clifton's point that the first explanations and race-neutral reasons that were given were given very quickly, and that it was only as we went back, the judge seemed to be a little bit confused before he made his initial erroneous decision. And where does he say, give me this page cited for colorable justification, because I thought it was on 657, and I see that I'm wrong. Let me return again. I think I picked up the wrong. 664. But the fact that he's a full-time student and yawns, strikes me as not a colorable justification for excluding him. So it doesn't have to do with the AK-47. It has to do with yawning and full-time student. Now, shouldn't we take that to mean a determination by the trial judge that the so-called race-neutral basis was worthless, and therefore the counsel was lying, and therefore counsel credibility should not be further countenanced? So therefore, the second explanation, AK-47, should not be considered. Isn't that what Miller et al. tells us? I don't believe so, Your Honor. The court, before it made its first tentative decision, was also told that he had an SKS and that his friend took AK-47 pistol hunting with him. So all of those reasons were on the record before the court made its first determination, but the court seemed a little bit confused at one point about who Juror No. 6 was. In the record, and I was referring actually to page 38 of the excerpts of record where the judge uses the not even a colorable Batson challenge. This is in the Volume I of the excerpts when the court is making its final determination. He says, all right, I have covered that, covered this repeatedly. This is not even a colorable Batson challenge in light of the issues that are on the table. That's not the first time he says that. But you're right, Your Honor, but I was just trying to clarify that. I don't find any mention of the gun before he first says he's a full-time student and yawns, strikes me as not a colorable justification for excluding him. That's at 664, as pointed out by Judge Clifton, 629. Okay. On 665, Your Honor, there's reference to the AK-47 rifle. And when I was talking about before the court comes to its conclusion. I understand when you say reference, did the prosecutor say that that was the reason for striking him? Yes. Yes. The first time around. But the yawning and the inattentiveness, the officer said there was an AK-47. The first time, yawning was the reason given. Yawning during the speech was the reason given. And then the court circles back around and says, okay, let's talk in more depth. And the court indicates that it doesn't find that yawning is a particularly sufficient reason. But as Your Honor pointed out, that's not the standard to apply. The standard to apply is whether or not it's a race-neutral reason and whether or not that's a pretext. There's no showing in the record that that was pretextual for race. The court questioned that reason on its own. I thought we get the pretext at the third step. At the second step, all the prosecutor has to do is to articulate a race-neutral ground. That's absolutely right, Your Honor. And we go to the third step, and then the judge has to make a finding of whether it was a pretext. That's right. And as soon as the court believed or stated its belief that he didn't think that yawning was substantial because he, too, yawns at times, and as Judge Clifton pointed out, yawning isn't a capital crime. I said it is. Yawning at a judge's comments is. I apologize for misstating the record. The record will be clear during the playback and reliving of this experience. So in any event, there were several race-neutral reasons that were given, all of which on applying the proper standard would be sufficient. And the court at the end of the day found that there was not even a colorable Batson challenge. And we submit that that is correct. And wouldn't it be fair to say that the judge ultimately found that the first ground was pretextual, but that the second ground, the second time around, after there was a briefing, I think, the AK-47 was more than sufficient to justify the challenge? I agree with the second half of that, but not with the first half. I saw Judge Baer shaking his head, and I agree with that. There was no finding that any of the reasons given were pretextual. There were discussions on the record that the judge didn't think that they were substantial, and they may not have survived a for-cause challenge, but there was no finding that no ultimate finding that any of those challenges were pretextual reasons for striking that juror. And I submit to you that none of them were, that there was no racial motivation by the prosecution for any of the strikes given, and all of them have ultimately been upheld or settled. The bolstering arguments that were made, there was no bolstering. There was just corroboration, and lots of it. This was not a close case. There was more than sufficient evidence. This Court has clearly said that uncorroborated testimony of a cooperating witness is sufficient, and in this case, there was lots of corroboration. The phone records were disclosed before trial. There was no request for a continuance to deal with those. At the end of the day, the most damning phone records were the defendant's own phone records, showing that he had had frequent contact with his co-conspirator, and it was the defendant's counsel at trial that raised a number of these strategic issues, as Defense Counsel on Appeal has pointed out, in opening statement. And he argued them throughout the trial in cross-examination and other ways, eliciting statements by Harris through other witnesses. Defense Counsel also could have called Harris at trial, but Defense Counsel chose not to. Defense Counsel elicited things that, frankly, if the government wanted to get them in, would have had difficulty getting them in, but now he's complaining about that on appeal. In fact, during opening statement, as part of the defendant's strategy at trial was to elicit that or to state and argue that Harris had recently been convicted. It's hard for me to imagine how the government could have possibly gotten that in, but because it was the defendant's strategy to paint the two co-conspirators as trying to throw the defendant under the bus, that's what he did. But that's not something that the defendant can now take a second bite at the apple and try a different strategy on appeal than was tried at trial. Kennedy, I'm going to ask you one quick question about Batson. I can't tell from the name. Was the defendant Hispanic? The defendant was not Hispanic. It's in the record that the defendant was actually from the Middle East. And was the juror who was struck Hispanic? The juror who was struck did have a Hispanic last name. And I'm just thinking, why as a strategic matter would a prosecutor want to strike a Hispanic juror in a case involving a defendant who's from the Middle East? Your Honor, this prosecutor would never strike a juror for strategic or other reasons. And I don't know any prosecutor in our office that would. I mean, I guess the argument would be there may be some solidarity or sympathy amongst minority oppressed peoples. I mean, the reality of Batson law is it gets applied so that you don't have to be a member of the same group to cite a Batson objection. You haven't argued that he can't pursue it. But the logic of it is a little hard to fathom. Yes. But it's not the policy of our office, nor do I know any of the prosecutors in our office who have ever struck a juror for non-race neutral reasons. And I have been doing this a shorter time than any of you. Calling us old? No. That could be a capital offense, too, Your Honor. Just relatively inexperienced, Your Honor. And in reference to the other things, many of the arguments that are being raised now were unobjected to below. And so the record isn't developed to know what would have happened at trial had there been an objection. And unless the Court has any further questions, I'll sit down. We thank you. We thank both counsel for the helpful arguments. The case just argued as submitted.
judges: Korman, Clifton, Bea